UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN P. LAURING, THE LAURING CHARITABLE FOUNDATION, AND THE LAURING FAMILY TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>LEE D. WEISS, FAMILY ENDOWMENT PARTNERS, LP, FAMILY ENDOWMENT PARTNERS, LLC, FEP FUND I, LP, FEP FUND II LTD, CATAMARAN HOLDINGS FUND, LTD., MOSAIC ENTERPRISES, INC., MOSAIC INVESTMENT PARTNERS, INC., CATAMARAN MANAGEMENT CO., INC. and PARTNERSADMIN LLC,<br><br>Defendants,<br><br>and<br><br>FEP FUND I, LP, FEP FUND II, LTD, CATAMARAN HOLDINGS FUND, LTD., WEISS CAPITAL REAL ESTATE GROUP, LLC, MOSAIC INVESTMENT PARTNERS, INC., MIP GLOBAL, INC., F/K/A MOSAIC INVESTMENT PARTNERS, INC., MOSAIC ENTERPRISES, INC., and CATAMARAN MANAGEMENT CO., INC.,<br><br>Reach and Apply Defendants. | CIVIL ACTION NO. |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1

## INTRODUCTION

1. John P. Lauring, individually and in his capacity as Trustee of the Lauring Family Trust and the Lauring Charitable Foundation (collectively, the "Plaintiffs"), bring this action to recover monetary and other appropriate relief against Lee Dana Weiss ("Mr. Weiss"), Family Endowment Partners, LP ("FEP"), Family Endowment Partners, LLC ("FEP, LLC"), FEP Fund I, LP, FEP Fund II, Ltd., Catamaran Holding Fund, Ltd., Catamaran Management, Co., Inc., Mosaic Investment Partners, Inc., Mosaic Enterprises, Inc., and PartnersAdmin, LLC (collectively, the "Defendants"). From October of 2008 to December 17, 2015, FEP was Mr. Lauring's investment advisor, and therefore his fiduciary, with all attendant duties and responsibilities. FEP, LLC was FEP's general partner, and acted through its founder and managing partner, Mr. Weiss. FEP Fund I, LP, FEP Fund II, Ltd., and Catamaran Holding Fund, Ltd. were hedge funds controlled by FEP and Mr. Weiss in which they invested significant sums of Mr. Lauring's money. Over the last two years, FEP and Mr. Weiss have been the subject of multiple litigations, a Securities & Exchange Commission (SEC) complaint, and were found jointly and severally liable for an arbitration award of Forty Eight Million Four Hundred Fifty Six Thousand Six Hundred Twelve Dollars ($48,456,612) in connection with their management of FEP Fund I. Plaintiffs have sought to recover what remains of their investments with the Defendants, but at this point have received nothing in return.

## PARTIES

2. Plaintiff John P. Lauring ("Mr. Lauring") is an individual, and resident of Worcester, Massachusetts. Mr. Lauring is a Trustee of the Lauring Family Trust and the Lauring Charitable Foundation.

3. Defendant Mr. Weiss is an individual, and resident of Newton, Massachusetts. Mr. Weiss was a founder and managing partner of FEP, and a principal officer of FEP, LLC. At all relevant times, Mr. Weiss controlled both FEP and FEP, LLC.

4. Defendant FEP is a Delaware limited partnership, formed in 2007, with its headquarters in Wayne, Pennsylvania. FEP is registered with the SEC as an investment advisor under the Investment Advisers Act of 1940. At all relevant times, FEP was the sole general partner of FEP Fund I, LP ("FEP Fund I"), and FEP Fund II, Ltd. ("FEP Fund II), (together with FEP Fund I, the "FEP Funds"). Accordingly, it had authority over the FEP Funds' selection of underlying portfolios and direct investments in cash and other assets, and made all decisions relating to the administration of the FEP Funds. The FEP Funds were established by FEP, LLC.

5. Defendant FEP, LLC is a Delaware limited liability company formed in 2007. At all relevant times, Mr. Weiss was a principal officer of FEP, through whom it acted. He managed FEP's day-to-day operations and generally formulated and implemented the investment strategy of the Hedge Funds. On information and belief, Mr. Weiss was also a member of FEP's General Partner's Investment Committee, which had sole authority over the FEP Funds' investment decisions, asset allocation and selection of investment vehicles.

6. Defendant Mosaic Enterprises, Inc., ("Mosaic Enterprises") is a Puerto Rico corporation for which Mr. Weiss is the Chief Executive Officer. Weiss was the sole owner of Mosaic Enterprises until at least February of 2015.

7. Defendant Mosaic Investment Partners, Inc. ("Mosaic") is a corporation that was established in Puerto Rico and is wholly owned by Mosaic Enterprises. Weiss is the Chief Executive Officer of Mosaic.

8. Defendant FEP Fund I, LP is a Delaware limited partnership formed in 2007.

9. Defendant FEP Fund II, Ltd. is a Cayman Islands limited company. FEP Fund II has investors and investment managers within the Commonwealth of Massachusetts. Service on this foreign Defendant will be sought pursuant to service abroad provisions of the Hague Convention on Jurisdiction and Foreign Judgments (the "Hague Convention").

10. Defendant Catamaran Holding Fund, Ltd. ("Catamaran Fund," (together, with FEP Fund I and FEP Fund II, the "Hedge Funds")) is a Cayman Islands entity which, upon information and belief, bases its operations out of Guaynabo, Puerto Rico. The Catamaran Fund has investors and investment managers within the Commonwealth of Massachusetts. Service on this foreign Defendant will be sought pursuant to service abroad provisions of the Hague Convention.

11. Defendant PartnersAdmin LLC ("PartnersAdmin") is a Delaware limited liability company formed in 2008. At all relevant times, PartnersAdmin prepared statements on behalf of FEP, FEP LLC, Mr. Weiss, and the Hedge Funds. At all relevant times, PartnersAdmin sent monthly and quarterly statements to the Plaintiffs and other investors in the Commonwealth of Massachusetts.

12. Defendant Catamaran Management, Inc. ("Catamaran Management") is the Investment Adviser to the Catamaran Fund. Mosaic owns 50% of Catamaran Management. Mr. Weiss was, at all relevant times, President of Catamaran Management.

13. Reach and Apply Defendant Weiss Capital Real Estate Group ("Weiss Capital") is a Massachusetts limited liability company. Weiss is the manager and 99% owner of Weiss Capital.

14. Reach and Apply Defendant MIP Global Inc. f/k/a Mosaic Investment Partners, Inc. ("MIP Global") is a Delaware corporation for which Mr. Weiss is the Chief Executive

Officer. In or around February of 2015, Mr. Weiss signed documents purporting to transfer his ownership interest in MIP Global to a trust for the benefit of his minor children.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises out of the laws of the United States.

16. Further, this matter concerns violation of the SEC Act of 1934, 15 U.S.C. § 78aa, and 17 C.F.R. § 240.10(b)(5), over which the District Courts of the United States have exclusive jurisdiction.

17. This Court has supplemental jurisdiction over the related state law claims in this action pursuant to 28 U.S.C. § 1367(a).

18. Venue is proper in the District of Massachusetts pursuant to the Subscription Agreement the Lauring Family Trust and FEP entered into on or about September 5, 2008. Pursuant to ¶ 8 of that Agreement, the parties agreed to bring all claims or actions arising out of it in either a state or federal court in Massachusetts, where Weiss and Mr. Lauring reside.

19. The Court has personal jurisdiction over PartnersAdmin pursuant to the Massachusetts Long Arm Statute, G.L. c. 223A, § 3(a), (c) and (d) because PartnersAdmin regularly did business within the Commonwealth, derived substantial revenue from services rendered within the Commonwealth, and has committed acts and/or omissions both within and outside the Commonwealth that caused harm to the Plaintiffs.

## FACTS

20. In or about July of 2008, Mr. Lauring was solicited by an associate of FEP to become a client of FEP and its affiliated investors.

21. According to materials provided to Mr. Lauring at the time, FEP's mission was as follows:

> Family Endowment Partners provides conflict free, endowment-quality, tax-conscious solutions for accredited individuals, endowments, family offices, foundations, and other institutions seeking to grow, diversify and preserve their investment capital. Leveraging the same sophisticated investment approach and similar talent as some of the nation's largest university endowment programs, our pooled-asset solution offers extraordinary access to a globally diversified institutional platform.

22. Plaintiffs relied upon certain representations made by FEP, FEP, LLC, and Mr. Weiss prior to their investment, including the fact that Ernst & Young served as auditor to the Funds.

23. In its initial solicitation, FEP claimed that FEP's three Chief Investment Officers (including Mr. Weiss) oversaw a collective $28 billion of assets, with experience managing Major League Baseball's Endowment, the Duke University Endowment Fund, and Princeton University's Endowment.

24. After multiple meetings and a three month long courtship, Plaintiffs agreed to invest in funds managed by FEP, FEP LLC, and Mr. Weiss.

### I. Lauring Family Trust Invests in FEP Fund I

25. On or about October 1, 2008, FEP, FEP LLC, and Mr. Weiss invested or caused $1,500,000 of the Lauring Family Trust's funds to be invested in FEP Fund I.

26. At its inception, FEP, FEP, LLC, and Mr. Weiss established FEP Fund I as a hedge fund that would operate as a "fund of funds." FEP was FEP Fund I's general partner and investment adviser, and Mr. Weiss made or approved all significant investment decisions for FEP Fund I.

27. In a private placement memorandum dated February of 2008 and provided to the Plaintiffs, FEP, FEP, LLC, and Mr. Weiss represented that FEP Fund I would seek "traditional and non-traditional investment opportunities," and that its portfolio would consist "primarily of interests in a small number of global multi-strategy funds or accounts managed by unaffiliated third parties." Plaintiffs relied on this representation when making their investments.

28. Under the terms of the private placement memorandum for FEP Fund I dated February of 2008, the portfolio structure of FEP Fund I, in relevant part, was as follows:

> The Fund's portfolio will consist primarily of interests in Underlying Portfolios. The Fund may also invest up to ten percent (10%) of its assets in transactions structured by managers, (which may be affiliates or non-affiliates of the Investment Manager) other co-investment transactions, seed-capital investments representing profit-sharing interests in managers of hedge funds and other investment products, and certain other direct investments ("Direct Investments")…

29. Initially, FEP Fund I's portfolio consisted of investments in three hedge funds.

30. In time, however, FEP, FEP, LLC, and Mr. Weiss's strategy changed drastically, without notice or explanation to Plaintiffs or other investors.

31. In December of 2011, FEP, FEP, LLC, and Mr. Weiss caused FEP Fund I to purchase a $2 million note from Biosyntec Polska Sp Zoo, a subsidiary of French company called Biosyntec SA ("Biosyntec"), a company in which Mr. Weiss was a part-owner.

32. In March of 2012, FEP, FEP, LLC, and Mr. Weiss caused FEP Fund I to invest approximately $2.5 million in Karien Sp Zoo ("Karien"), a Polish subsidiary of Biosyntec.

33. Between May and June 2012, FEP, FEP, LLC, and Mr. Weiss caused FEP Fund I to invest approximately $9 million in Globe 360 Tobacco Inc. ("Globe 360"), yet another subsidiary of Biosyntec.

34. On information and belief, by December 2012, FEP, FEP, LLC, Mr. Weiss re-allocated the portfolio so that FEP Fund I's holdings included over 56% in direct investments, many of which Mr. Weiss had an affiliation and personal ownership interest in.

35. At no point did FEP, FEP, LLC or Mr. Weiss disclose his interest in Biosyntec, and therefore its underlying subsidiaries, to Plaintiffs.

36. Throughout 2013 and 2014, FEP Fund I's holdings far exceeded 10% of its portfolio. Mr. Weiss knew or was reckless in not knowing this fact.

37. As Mr. Lauring's fiduciaries, FEP, FEP, LLC, Mr. Weiss should have disclosed to him what their affiliated hedge funds invested in. The only information provided to Mr. Lauring were single-page statements, which provided no meaningful detail as to individual investments.

38. After December 2012, FEP, FEP, LLC, Mr. Weiss did not inform Plaintiffs that their direct investments in FEP Fund I were significantly greater than the 10% stated in the private placement memorandum.

39. In May 2014, FEP Fund I sent a letter to fund investors, signed by Mr. Weiss, seeking to change the private placement memorandum to remove the 10% limit on direct investments.

40. Mr. Weiss knew or was reckless in not knowing that the May 2014 letter was materially misleading because it failed to disclose that the FEP Fund I portfolio exceeded the 10% limit on direct investments and had done so since December of 2012.

**II.     Lauring Charitable Trust Invests in FEP Fund II**

41. On or about October 1, 2008, FEP, FEP, LLC, Mr. Weiss invested or caused $5,000,000 of the Lauring Charitable Trust's funds to be invested in FEP Fund II. The private

placement memorandum for FEP Fund II contained the exact same language regarding the fund's portfolio structure, including the limitation on direct investments.

42. On information and belief, in or around 2012, FEP Fund II's holdings consisted of significantly more than 10% in direct investments, in contravention of the private placement memorandum, many of which Mr. Weiss had an affiliation with and personal ownership interest in.

43. In or about January of 2014, FEP Fund II sent a letter to fund investors, signed by Mr. Weiss, seeking to change the private placement memorandum to remove the 10% limit on direct investments.

44. Mr. Weiss knew or was reckless in not knowing that the January 2014 letter was materially misleading because it failed to disclose that the FEP Fund II portfolio exceeded the 10% limit on direct investments and had done so since December of 2012.

### III. Mr. Lauring Invests in the Catamaran Fund

45. In or about June of 2014, FEP, FEP, LLC, Mr. Weiss invested or caused $250,000 of Mr. Lauring's funds to be invested in the Catamaran Fund.

46. Mr. Weiss was the President of the Catamaran Fund.

47. Between May and June 2012, Weiss caused the Catamaran Fund to invest approximately $1 million in Globe 360, a subsidiary of Biosyntec.

48. At the time he caused this investment, Weiss did not disclose to investors in the Catamaran Fund that he had a financial interest in Biosyntec.

49. At no point did FEP, FEP, LLC or Mr. Weiss disclose Mr. Weiss's interest in Biosyntec, and therefore its subsidiaries, to Plaintiffs.

50. In 2014, Globe 360 transferred its assets and real property to FEP Fund I and the Catamaran Fund in purported satisfaction of refinanced loans, which had the stated face value of $11.37 million. The actual value of Globe 360's former assets and real property is unclear.

51. On information and belief, Mr. Weiss received over $616,000 in direct and indirect payments from Biosyntec and related entities from February 2010 through September 2012. According to a Complaint filed by the SEC in this Court, other companies owned by Mr. Weiss, including Weiss Capital and MIP Global, were the recipients of these ill-gotten gains.

### IV. PartnersAdmin Stands Idle in the Face of Fraud, or Worse

52. On a monthly and quarterly basis, PartnersAdmin issued account statements to Plaintiffs reflecting purported investments in FEP Fund I, FEP Fund II and the Catamaran Fund.

53. On its website, PartnersAdmin's "About Us" page conveys a mission statement centered on best practices and investor protection:

> PartnersAdmin LLC was established in July of 2008 with the intent to provide a quality, outsourced solution to meet the dynamic back office needs of the hedge fund industry. In response to the industry's increasing focus on best practices to reduce systemic risk and promote investor protection, fund managers are continuously faced with distractions and rising internal costs. With offices located in both Manhattan Beach, CA and New York City, our team of experts has the hands-on experience necessary to solve the challenging operational issues faced by hedge funds. By teaming up with Archway Technology Partners, our web-based platform ATWeb further allows us to offer a complete solution with an uncompromised focus on accuracy, auditability, and transparency.

54. These account statements provided a cursory look at each Fund, including (1) Performance History; (2) Account Value Summary; (3) Performance Summary; (4) Change in Value Summary; and (5) Net Performance.

55. Notwithstanding the fact that the Hedge Funds' investments had not been audited since December 2011, PartnersAdmin continued to prepare and issue account statements to Plaintiffs.

56. In a so-called "2015 Side Pocket Update" dated October 15, 2015, FEP acknowledged that FEP Fund I had been named in a lawsuit by two of its investors. FEP did not disclose that prior to that, on April 14, 2015, FEP and Mr. Weiss had been found jointly and severally liable for an arbitration award of Forty Eight Million Four Hundred Fifty Six Thousand Six Hundred Twelve Dollars ($48,456,612) in connection with its management of FEP Fund I.

57. Notwithstanding the significant judgment against FEP and Mr. Weiss and the negative publicity that followed, PartnersAdmin continued to prepare and issue account statements on behalf of FEP Fund I, FEP Fund II, and Catamaran Fund.

### V. Plaintiffs, Now Aware of the Fraud, Try to Get Out

58. On December 17, 2015, Plaintiffs sent a letter to FEP Fund I, FEP Fund II, Ltd., Catamaran Holding Fund Ltd., and Mr. Weiss requesting the termination of all agreements that Plaintiffs had with the Hedge Funds.

59. Plaintiffs requested that the entire balance remaining in the funds be returned to them.

60. In response to Plaintiffs' letter, Mr. Weiss confirmed receipt of the notice, and indicated that the redemptions would be completed, and that the funds did not require additional notice. Additionally, he represented that he would ensure that each manager received the notice of Plaintiffs' request for redemption.

61. Despite Plaintiffs' requests and Weiss's confirmation that their redemptions had processed and assurance of subsequent payment, Plaintiffs have not received a single redemption

payment from FEP, FEP LLC, FEP Fund I, FEP Fund II, Catamaran Fund, Mr. Weiss or any of the other Defendants.

## COUNTS

### COUNT I
### Violation of Securities Exchange Act of 1934 §10(b)(5) and 17 C.F.R. § 240.10(b)(5)
### (FEP, FEP, LLC, and Mr. Weiss)

62. Plaintiffs reallege and incorporate the allegations in the foregoing paragraphs as if fully alleged herein.

63. FEP, FEP, LLC, and Mr. Weiss, acting with scienter and in connection with the purchase and sale of securities, directly or indirectly, (a) employed a device, scheme, and artifice to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or a course of business which operated as a fraud or deceit upon Plaintiffs.

64. FEP, FEP, LLC, and Mr. Weiss used their discretionary trading authority over Plaintiffs' assets to concentrate a significant amount of their assets in companies in which Mr. Weiss had significant financial interest. This was a material fact withheld from Plaintiffs, and one which should have been disclosed to Plaintiffs before those investments were made.

65. FEP, FEP, LLC, and Mr. Weiss also failed to disclose the true nature of the financial troubles of these companies to the Plaintiffs before investing millions of dollars of Plaintiffs' money into them.

66. FEP, FEP, LLC, and Mr. Weiss owed Plaintiffs an obligation to disclose the numerous civil and regulatory actions that existed involving Mr. Weiss, but failed to do so.

67. Plaintiffs justifiably relied on FEP, FEP, LLC, and Mr. Weiss to appropriately manage their accounts consistently with their instructions and act in their best interests.

68. FEP, FEP, LLC, and Mr. Weiss's actions have caused, and continue to cause, Plaintiffs substantial harm in an amount to be determined.

## COUNT II
### Breach of Fiduciary Duty
### (FEP, FEP, LLC, FEP Fund I, LP, and Mr. Weiss)

69. Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs as if fully alleged herein.

70. FEP, FEP, LLC, and Mr. Weiss each had a fiduciary relationship with the Plaintiffs that arose from the Subscription Agreement they entered into on or about October 1, 2008. Each breached that duty. Plaintiffs lost money as a result of that breach.

71. FEP managed Plaintiffs' assets through FEP, LLC and Mr. Weiss. Together, they served as Plaintiffs' investment advisors. Plaintiffs relied upon their specialized knowledge and judgment.

72. FEP, FEP, LLC, and Mr. Weiss did not act for the benefit of the Plaintiffs as their investment advisers. They made high-risk, illiquid investments that were inconsistent with Mr. Lauring's investment objectives and level of risk tolerance. FEP and Mr. Weiss never disclosed to Mr. Lauring what their affiliated Hedge Funds invested in, and engaged in self-dealing contrary to Mr. Lauring's interests. As Mr. Lauring's fiduciaries, FEP, FEP, LLC and Mr. Weiss owed Mr. Lauring a duty of undivided loyalty. Yet they failed to disclose their personal positions in an ever-increasing portion of the Hedge Fund investments, and continued to represent themselves as providing "conflict-free" investments.

73. The Lauring Family Trust was also a limited partner in FEP I, LP. FEP was its sole general partner, which acted through its general partner, FEP, LLC. FEP, LLC, as established above, acted through Mr. Weiss. All of the knowledge, and all of the conduct engaged in by FEP, FEP, LLC, and Mr. Weiss related to the partnership are also attributable to FEP I, LP. By not disclosing the bad acts of FEP, FEP, LLC and Mr. Weiss above, FEP I, LP breached their fiduciary duty to their partner.

74. FEP, FEP, LLC, FEP I, LP and Mr. Weiss's actions have caused, and continue to cause, Plaintiffs substantial harm in an amount to be determined.

## COUNT III
### Fraud
**(FEP, FEP, LLC, FEP Fund I, FEP Fund II, Catamaran Fund and Mr. Weiss)**

75. Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs as if fully alleged herein.

76. FEP, FEP, LLC, FEP Fund I, FEP Fund II, Catamaran Fund and Mr. Weiss used their discretionary trading authority over Plaintiffs' assets to concentrate a significant amount of their assets in companies in which Mr. Weiss had significant financial interest. This was a material fact withheld from Mr. Lauring, and one which should have been disclosed to him before making those investments.

77. FEP, FEP, LLC, FEP Fund I, FEP Fund II, Catamaran Fund and Mr. Weiss also failed to disclose the true nature of the financial troubles of these companies to Mr. Lauring before investing millions of dollars of Mr. Lauring's money into them.

78. Mr. Weiss, being a highly experienced investment adviser, knew that these investments were very high risk.

79. FEP, FEP, LLC, and Mr. Weiss owed Plaintiffs an obligation to disclose the numerous civil actions that implicated him, but failed to do so in any meaningful way.

80. FEP, FEP, LLC, FEP Fund I, FEP Fund II, Catamaran Fund, and Mr. Weiss's actions have caused, and continue to cause, Plaintiffs substantial harm in an amount to be determined.

## COUNT IV
## Breach of Contract
**(FEP, FEP, LLC, FEP Fund I, FEP Fund II, Catamaran Fund, and Mr. Weiss)**

81. Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs as if fully alleged herein.

82. Plaintiffs and FEP (which acted through and was represented by FEP, LLC and Mr. Weiss) had valid investment advisory agreements. FEP, FEP, LLC, and Mr. Weiss breached these contracts, which resulted in a significant loss of money by Mr. Lauring.

83. FEP, FEP, LLC and Mr. Weiss breached the terms of the agreements when it invested Mr. Lauring's assets in unsuitable and illiquid investments over and above the 10% direct investment limitation.

84. FEP, FEP, LLC and Mr. Weiss breached the terms of these agreements when it invested significant amounts of Plaintiffs' assets in companies in which Mr. Weiss had significant financial interest.

85. Plaintiffs had subscription agreements with FEP Fund I, FEP Fund II, and Catamaran Fund.

86. Under the terms of each subscription agreement, Plaintiffs were entitled to redeem their capital accounts after providing notice to the investment managers for each Fund.

87. Plaintiffs demanded redemption pursuant to the subscription agreements. Despite Plaintiffs' requests and Weiss's confirmation that their redemptions had processed and assurance of subsequent payment, Plaintiffs have not received a single redemption payment from FEP, FEP LLC, FEP Fund I, FEP Fund II, Ltd., Catamaran Holding Fund Ltd., or Mr. Weiss.

88. By reason of these actions, plaintiffs have been injured in an amount to be determined at trial.

## COUNT V
## Gross Negligence
### (FEP, FEP, LLC, Mosaic, Mosaic Enterprises, Catamaran Management, and Mr. Weiss)

89. Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs as if fully alleged herein.

90. FEP, FEP, LLC, Mosaic, Mosaic Enterprises, Catamaran Management and Mr. Weiss had discretionary authority over Plaintiffs' accounts and thus owed them a duty to manage his accounts in a way that reflected their stated investment objectives and to act in their best interests.

91. FEP, FEP, LLC, Mosaic, Mosaic Enterprises, Catamaran Management and Mr. Weiss breached that duty to Plaintiffs by:

   a. Failing or refusing to invest in companies that furthered the Plaintiffs' investment objectives;

   b. Failing or refusing to disclose Mr. Weiss's grave, material conflicts of interest, including significant company affiliations and compensation arrangements with companies that FEP, FEP, LLC and Mr. Weiss placed in Plaintiffs' investment portfolio;

    c. Failing to disclose numerous, material civil actions and their resulting potential and actual liabilities;

    d. Failing or refusing to return Plaintiffs' investment after asserting that all redemptions had been submitted and accepted.

92. By reason of these actions, Plaintiffs have been injured in an amount to be determined at trial.

## COUNT VI
## Negligence
## (PartnersAdmin)

93. Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs as if fully alleged herein.

94. In their preparation and disbursal of account statements on behalf of the other defendants, PartnersAdmin had a duty to the Plaintiffs to provide their services with the degree of care and skill expected of an investment support services company.

95. Notwithstanding the fact that the Funds had not been audited since December 2011, PartnersAdmin continued to prepare and issue account statements to the Plaintiffs through 2015.

96. As a prominent member of the investment support services industry, PartnersAdmin knew, or should have known, of FEP, FEP, LLC, and Mr. Weiss's fraudulent conduct, both from its processing of FEP's transactions and its position in the investment community.

97. Notwithstanding the significant judgment against FEP and Mr. Weiss and the negative publicity that followed, PartnersAdmin continued to prepare and issue account

statements on behalf of FEP Fund I, FEP Fund II, Ltd., and Catamaran Holding Fund Ltd., in breach of their duty to Plaintiffs.

98. As a result of PartnersAdmin's negligence, Plaintiffs have been injured in an amount to be determined at trial.

## COUNT VII
## Civil Conspiracy
## (All Defendants)

99. Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs as if fully alleged herein.

100. Defendants have conspired to defraud the Plaintiffs by misrepresenting the true nature of investments contained in the Funds in order to compel Plaintiffs to continue to invest in the Funds.

101. In furtherance of their conspiracy, Defendants engaged in one or more unlawful acts, including but not limited to fraud and misrepresentation, to induce Plaintiffs to invest and keep their money in the Hedge Funds.

102. Plaintiffs have been damaged by Defendants' actions in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs John P. Lauring, The Lauring Charitable Foundation, and The Lauring Family Trust respectfully request that this Court:

a. Enter judgment in their favor against Defendants on all counts and award damages in an amount to be determined at trial, together with costs and interest.

b. Grant a preliminary injunction restraining FEP Fund I, LP, FEP Fund II, Ltd., Catamaran Holdings Fund, Ltd., Weiss Capital Real Estate Group, LLC, Mosaic Enterprises,

Inc., Mosaic Investment Partners, Inc., Mosaic Enterprises, Inc., and Catamaran Management, Co., Inc. from transferring, assigning, conveying, or otherwise disposing of any assets held therein,

c. Enter a decree allowing Plaintiffs to reach and apply any rights, titles and interests, legal or equitable, to the extent Mr. Weiss has an ownership interest in: FEP Fund I, LP, FEP Fund II, Ltd., Catamaran Holdings Fund, Ltd., Weiss Capital Real Estate Group, LLC, MIP Global Inc., f/k/a Mosaic Investment Partners, Inc., Mosaic Enterprises, Inc., Catamaran Management, Inc., and Mosaic Investment Partners, Inc.

d. Provide such other relief as this Court deems just and equitable.

### DEMAND FOR A JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

JOHN P. LAURING, THE LAURING
CHARITABLE FOUNDATION, THE
LAURING FAMILY TRUST,
By Their Attorneys,

/s/ *Louis M. Ciavarra*
Louis M. Ciavarra (BBO #546481)
Anthony J. Dragga (BBO #691118)
BOWDITCH & DEWEY, LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156
Telephone: 508-926-3408
Facsimile: 508-929-3011
E-mail: lciavarra@bowditch.com
E-mail: adragga@bowditch.com

Date: February 17, 2016